**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRADLEY HAMILTON and ELIZABETH HAMILTON, individually and as the parents and guardians of AA, a minor, and AA, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 20 CV 292** |
| | ) | **Hon. Steven C. Seeger** |
| OSWEGO COMMUNITY UNIT SCHOOL DISTRICT 308; and OSWEGO COMMUNITY UNIT SCHOOL DISTRICT 308 BOARD OF EDUCATION | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

Plaintiffs, Bradley Hamilton and Elizabeth Hamilton, individually and as the parents and

guardians of AA, a minor, and AA, by and through their counsel, RAPIER LAW FIRM, bring this

lawsuit against Defendants, Oswego Community Unit School District 308 and Oswego

Community School District 308 Board of Education, and in support thereof state as follows:

1.       The three Plaintiffs are residents and citizens of the State of Illinois.  Bradley Hamilton

and Elizabeth Hamilton are the parents and guardians of AA, a minor.

2.       Defendants, Oswego Community Unit School District 308 and Oswego Community

School District 308 Board of Education, were responsible for providing a free and appropriate

education to AA.

3.       Defendants, by and through their employees and authorized agents, unlawfully

retaliated against Plaintiffs in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §749,

and Title II of the American with Disabilities Act, 42 U.S.C. §12203. Defendants retaliated against

Plaintiffs in two ways: Defendants' agents performed an illegal search of AA and made bad faith

1

reports to Illinois Department of Children and Family Services ("DCFS") about the alleged abuse and neglect of AA.

4.        Defendants performed the illegal search and made the false reports to DCFS in retaliation for the following protected activities: AA sought a free and appropriate education; AA's parents attempted to secure special education services and accommodations for AA; and the parents' complained about Defendants' violations of law.

5.        Defendants retaliated against both the parents and AA. Defendants illegally searched AA and falsely reported to DCFS that AA had been abused and neglected. Defendants' bad faith reports to DCFS triggered an investigation and the temporary separation of Bradley Hamilton from his family. Ultimately, the allegations of abuse and neglect were determined to be "unfounded", and Mr. Hamilton was allowed back home with his family.

6.        The parents are asserting their own rights and the rights of AA in this case. The parents are asserting the following rights in Counts I and II: the parents' rights to advocate for AA related to AA's federal and state educational rights; and the parents' rights to request accommodations for AA's disability.

7.        The parents are asserting the following rights on behalf of AA (a minor) in Counts III and IV: AA's right to a free and appropriate education; and AA's right to attend school without being unlawfully searched by school personnel.

8.        This Court has jurisdiction over the parties and the subject matter of this lawsuit based on 28 U.S.C. § 1331. All parties are residents and citizens of the State of Illinois. Plaintiffs' claims arise under Section 504 of the Rehabilitation Act, 29 U.S.C. §749, and Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. §12203.

9.        In accordance with 28 U.S.C. § 1391, venue is proper because Defendants resided and

a substantial part of the events giving rise to Plaintiffs' claims occurred within this Judicial District.

10.     Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Section 504 incorporates the anti-retaliation provision of Title VI of the Civil Rights Act, which "prohibits recipients from intimidating, threatening, coercing, or discriminating against any individual for the purpose of interfering with any right or privilege … or because he [or she] had made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part." It is illegal to "discharge, intimidate, retaliate, threaten, coerce or otherwise discriminate against any person" for seeking to enforce Section 504. 29 C.F.R. § 33.13.

11.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. The anti-retaliation provisions of Title II of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful" by this Act. 42 U.S.C. § 12203; 28 C.F.R. 35.134.

12.     At all times relevant to the Complaint, AA was disabled, as defined in the Rehabilitation Act and the ADA, and qualified to receive special education services. AA is a qualified individual with a disability because she has a physical impairment that substantially limits one or more major life activities. AA is hearing impaired / hard of hearing.

13.     Plaintiffs were engaged in a legally protected activity when Defendants retaliated against them. AA was attempting to secure a free and appropriate education; and AA's parents

were advocating for special education services and accommodations for AA's disability when Defendants retaliated against them.

14.     Defendants knew Plaintiffs were engaged in legally protected activities when Defendants retaliated against Plaintiffs. The individuals who retaliated against Plaintiffs were directly involved in the IEP meetings where AA was attempting to secure a free and appropriate education and AA's parents were advocating for special education services and accommodations for AA.

15.     Defendants took actions adverse to Plaintiffs. Defendants conducted an unlawful search of AA and made bad faith reports to DCFS about the alleged abuse and neglect of AA. Conducting an unlawful search of a 5-year-old child and making bad faith reports to DCFS about abuse and neglect are reasonably likely to deter Plaintiffs and others from seeking a free and appropriate education or advocating for special education services and accommodations.

16.     Plaintiffs' legally protected activities and Defendants' adverse actions were causally connected. Defendants conducted the unlawful search and made a bad faith report to DCFS the day after the contentious IEP meetings ended. Defendants would not have retaliated against Plaintiffs had Plaintiffs not engaged in the legally protected activities of attempting to secure a free and appropriate education and special education services for AA.

17.     There was no legitimate or non-discriminatory reason for the adverse actions taken by Defendants.

18.     On January 17, 2018, Defendants by and through their authorized agents and employees, reported to DCFS that Brad Hamilton had abused or neglected AA. Defendants' report to DCFS occurred the day after the parties' two-day and contentious meeting regarding AA's Individualized Education Program or IEP, and the day after Plaintiffs confronted and notified

4

Defendants about Defendants' violations of law.

19.     Defendants made the hotline call after the school nurse and / or the school social worker reportedly saw a three (3) inch bruise on AA's right hip.  The bruise Defendants reported seeing would not have been visible to Defendants without taking down or removing AA's pants below her buttocks.  AA was five (5) years old at the time of the illegal search. The parents were not notified about the January 17, 2018 search in advance and only discovered Defendants had illegally searched their daughter after records from DCFS were obtained in this case. Defendants searched AA on school grounds, during school hours, and without consent. Defendants' illegal search was inappropriate, a violation of Defendants' and DCFS' rules, and part of Defendants' effort to retaliate against Plaintiffs and drive them out of the school district.

20.     The social worker who made the hotline call to DCFS on January 17, 2018, was directly involved as a participant in the contentious IEP meetings, including the meeting where Plaintiffs confronted and notified Defendants that they had violated the law by, without limitation, using pre-populated forms during the IEP meeting that included information, rights, and responsibilities that could not have been drafted or agreed upon until after completion of, and participation by both sides in, the IEP meeting. When Plaintiffs confronted Defendants, and Defendants' IEP team specifically, about the violation of law, Defendants (including the social worker who made the bad faith hotline call on January 17, 2018) became very defensive and combative.

21.     DCFS investigators showed up at Plaintiffs' home. Elizabeth Hamilton told the investigators the hotline call was made in retaliation for the parents' advocacy during the IEP process. On information and belief, that was reported back to Defendants. In the following days, Defendants, by and through several different employees and authorized agents who were directly involved as participants in the contentious IEP meetings, made several other reports to DCFS

regarding suspected abuse and neglect, including alleged abuse and neglect which had supposedly

occurred prior to the IEP meeting, but which Defendants had not previously reported to DCFS.

22.        While the specific reports Defendant made to DCFS will not be stated in this Second

Amended Complaint, the evidence at trial will show Defendants accused Brad Hamilton and

another family member of unspeakable and lascivious acts on AA (then, a 5-year-old girl).

23.        Plaintiffs were damaged as the result of Defendants' adverse actions and violations of

law. Plaintiffs' damages include, without limitation, the costs of defending the baseless allegations

of abuse and neglect (which were ultimately determined to be "unfounded"); and moving out of

the school district.

24.        Plaintiffs seek all damages, attorney's fees and other remedies allowed by law.

25.        Plaintiffs demand trial by jury on all claims and issues so triable.

### COUNT I
**Retaliation**
**Section 504**
**(Elizabeth & Bradley Hamilton)**

26.        Plaintiffs, Elizabeth and Bradley Hamilton, incorporate Paragraphs 1 – 25 *supra* as

Paragraph 26 of Count I.

27.        AA is an individual with several disabilities, and she is eligible for special education.

Advocating for a disabled student regarding issues related to her federal and state educational

rights is a protected activity under both the Rehabilitation Act and the Americans with Disabilities

Act. Requesting accommodations for a disabled student is also a protected activity under both civil

rights statutes.  Plaintiffs advocated for AA (a disabled student and individual with a disability)

regarding her rights to a free and appropriate education, and specific accommodations for her

education as a part of the IEP process.

28.        Making bad faith reports to DCFS, which *inter alia* threaten parents with the loss of

parental rights and performing an illegal search of a parent's child are reasonably likely to deter parents from engaging in the protected activity of requesting accommodations for their child's disability (*Stanek v. St. Charles Cmty. Unit Sch. Dist*., 783 F.3d 634 (7th Cir. 2015)). Plaintiffs were subjected to direct and indirect adverse actions as the result of engaging in protected activity. The bad faith reports to DCFS were a direct reprisal for the parents' advocacy. The illegal search of AA was an indirect or third-party reprisal for the parents' advocacy. The adverse actions would not have been taken by Defendants but for Plaintiffs engaging in protected activities as set forth above. Defendants had no legitimate, non-discriminatory reason for illegally searching AA and making bad faith reports to DCFS.

## COUNT II
### Retaliation
### Americans With Disabilities Act
### (Elizabeth & Bradley Hamilton)

29.        Plaintiffs incorporate Paragraphs 1 – 28 *supra* as Paragraph 29 of Count II.

## COUNT III
### Retaliation
### Section 504
### (AA)

30.        Plaintiff, AA by and through her parents and guardians, Elizabeth and Bradley Hamilton, incorporate Paragraphs 1 – 25 *supra* as Paragraph 30 of Count III.

31.        AA is an individual with several disabilities, and she is eligible for special education. AA's parents advocated on behalf of AA (a disabled student and individual with a disability) regarding her rights: to a free and appropriate education; and to attend school without being unlawfully searched by school personnel.

32.        Making bad faith reports to DCFS, which *inter alia* threaten children with alienation and displacement from parents and performing an illegal search of a child are reasonably likely to

deter parents from seeking a free and appropriate education for their child in the offending school district. AA was subjected to direct and indirect adverse actions as the result of AA's parents engaging in protected activity on behalf of AA. The bad faith reports to DCFS were both a direct reprisal for the accommodations AA required and an indirect or third-party reprisal for the advocacy of AA's parents. The illegal search of AA was also a direct reprisal for the accommodations AA required and an indirect or third-party reprisal for the advocacy of AA's parents. The adverse actions would not have been taken by Defendants but for Plaintiffs engaging in protected activities as set forth above. Defendants had no legitimate, non-discriminatory reason for illegally searching AA and making bad faith reports to DCFS.

## COUNT IV
### Retaliation
### Americans With Disabilities Act
### (AA)

33.        Plaintiff, AA, by and through her parents and guardians, Elizabeth and Bradley Hamilton, incorporate Paragraphs 30 – 32 *supra* as Paragraph 33 of Count IV.

## COUNT V
### *Monell* Claim
### 42 USC §1983
### (Unwritten Policy or Custom to Retaliate with Bad Faith DCFS Reporting Against Parents Who Exercised Protected-Speech)

34.        Plaintiffs incorporate Paragraphs 1 – 25 *supra* as Paragraph 34 of Count V.[1]

35.        In *Peoples v. Oswego Community Unit School District 308*, *et al*, Case No. 19-cv-568 (United States District Court, Northern District of Illinois, Eastern Division, Chang, J.), Plaintiffs alleged that Defendants made a bad faith report to DCFS in retaliation for the parent having

---

[1] On February 26, 2021, the Court dismissed Plaintiffs' *Monell* claim. (Doc. #37). Plaintiffs reallege and restate the previously dismissed *Monell* claim as Count V of the Second Amended Complaint for the sole purpose of preserving all rights to appeal the Court's dismissal of that claim. No answer to Count V of the Second Amended Complaint is necessary.

advocated for his child who was an enrolled student in the same school district as AA.

36.     Upon information and belief, in addition to Arnold Peoples and the Plaintiffs in this case, Defendants have created a pattern and practice of retaliating against other parents who have communicated to and made demands upon Defendants concerning their children's education in the school district. The retaliation has taken the form of making to DCFS bad faith reports against the parents alleging that the parents have injured, abused, or neglected their children.

37.     The context of the retaliation consists of the mandatory reporting provisions in 325 ILCS 5/4, under which teachers and other school personnel are required to immediately report to a DCFS hotline if they have reasonable cause to believe a child has been abused or neglected.

38.     Furthermore, such reporting is shrouded in confidentiality by 325 ILCS 5/11.1, which also facilitates bad faith reporting. However, Defendants have knowingly allowed their teachers and other personnel to weaponize mandatory reporting and wield it as a veil or shield of impunity to silence and intimidate outspoken parents and other parents.

39.     Upon information and belief, Defendants have knowledge of and have ratified through their silence or, alternatively, have maintained a reckless indifference to the pattern of retaliation such that the retaliation has become an unwritten policy or custom. Furthermore, Defendants have knowingly allowed, or alternatively, have recklessly ignored the implementation of the unwritten policy and custom by their personnel.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendants on Counts I-IV of the Second Amended Complaint; and that compensatory damages, punitive damages (as allowed by law), attorneys' fees (as allowed by law), costs of suit and interest be awarded to Plaintiffs.

9

Dated:  March 19, 2021                                    Respectfully submitted,

                                                          By: /s/ Aaron W. Rapier


Aaron W. Rapier
Rapier Law Firm
1770 Park Street, Suite 200
Naperville, IL 60563
(630) 853-9224 (phone)
IL No. 6270472
arapier@rapierlawfirm.com